**PLANNED PARENTHOOD CINCINNATI REGION, et al., Plaintiffs,**

v.

**Bob TAFT, et al., Defendants.**

No. C–1–04–493.

United States District Court, S.D. Ohio, Western Division.

Sept. 22, 2004.

Alphonse Adam Gerhardstein, Jennifer Lynn Branch, Laufman & Gerhardstein, Cincinnati, OH, Jeffrey M. Gamso, Beatrice Jessie Hill, Cleveland, OH, Nicole G.

Berner, Washington, DC, Roger K. Evans, New York City, for Plaintiffs.

Holly J. Hunt, Ohio Attorney General, Sharon A. Jennings, Ohio Attorney General, Anne Berry Strait, Columbus, OH, Kathleen McGarvey Hidy, Tamara Susan Sack, Hamilton County Prosecutor's Office, Cincinnati, OH, for Defendants.

### FIRST AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANT ALLEN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

DLOTT, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction (doc. # 2) and Defendant Michael K. Allen's Motion To Dismiss This Action Under Federal Rule 12(B) (doc. # 28). Plaintiffs Planned Parenthood Cincinnati Region, Planned Parenthood of Central Ohio, Planned Parenthood of Greater Cleveland, and Preterm ("Planned Parenthood") filed both the original Complaint (doc. # 1) and the Motion for Preliminary Injunction (doc. # 2) on August 2, 2004. For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion.

## I. BACKGROUND

Plaintiffs Planned Parenthood, Dr. Sogor, and Dr. Kade (collectively, "Plaintiffs"), brought this action challenging the constitutionality of Ohio's recently enacted H.B. 126 ("the Act"), which is scheduled to take effect on September 23, 2004. The Act regulates the use of mifepristone, commonly known as RU–486, which is a drug used for medical abortion. Specifically, the Act provides:

No person shall knowingly give, sell, dispense, administer, otherwise provide, or prescribe RU–486 (mifepristone) to another for the purpose of inducing an abortion ... unless the person ... is a physician, the physician satisfies all the criteria established by federal law that a physician must satisfy in order to provide RU–486 (mifepristone) for inducing abortions, and the physician provides the RU–486 (mifepristone) to the other person for the purpose of inducing an abortion *in accordance with all provisions of federal law* that govern the use of RU–486 (mifepristone) for inducing abortions.

§ 2919.123(A) (emphasis added).

The Act defines "federal law" as, "any law, rule, or regulation of the United States or any drug approval letter of the food and drug administration of the United States that governs or regulates the use of RU–486 (mifepristone) for the purpose of inducing abortions." *See* § 2919.123(F). Violators of the Act are deemed "guilty of unlawful distribution of an abortion-inducing drug, a felony of the fourth degree," and repeat offenders are guilty of a felony in the third degree. *See* § 2919.123(E). Further, the Act provides that offenders who are doctors are "subject to sanctioning as provided by law by the regulatory or licensing board or agency that has the administrative authority to suspend or revoke the offender's professional license." *Id.* Finally, the Act requires the state medical board to revoke, suspend, reprimand, or refuse to grant a certificate to any doctor who enters a plea of guilty or is found guilty of violating any state law regulating the distribution of any drug. *See* § 4731.22(B)(3). Section 4731.22(B)(3) clearly applies to doctors found guilty of violating Section 2919.123(A) for unlawfully prescribing mifepristone.

Plaintiffs moved for a preliminary injunction "restraining defendants, their employees, agents, and successors, and all others acting in concert or participation with them, from enforcing the provisions of H.B. 126" (doc. # 2, at 1). Plaintiffs

named as defendants Bob Taft, the Governor of Ohio, and Jim Petro, the Attorney General of Ohio, in their official capacities, and Michael K. Allen, as Prosecuting Attorney for Hamilton County, Ohio, and as a representative of a class of all prosecuting attorneys in Ohio. On August 23, 2004, Plaintiffs filed a Motion for Certification of Defendant Class (doc. # 10), requesting that the Court certify a defendant class consisting of all county prosecuting attorneys in Ohio and appoint Michael K. Allen as the defendant class representative.[1] In challenging the Plaintiffs' Motion for Preliminary Injunction, Defendants argue that Plaintiffs' Motion should be denied because Plaintiffs lack standing to bring this suit, and Defendant Allen moves to Dismiss on the same ground.

## II. JURISDICTION AND STANDING

The Court conducted a hearing on the Motion for Preliminary Injunction on September 13 and 14, 2004. Following Opening Statements on September 13, 2004, the Court expressed its concerns about Planned Parenthood's standing. On the morning of September 14, 2004, before the Court convened, Plaintiffs filed an Amended Complaint (doc. # 18) adding Dr. Laszlo Sogor and Dr. Roslyn Kade ("Plaintiff Physicians") as Plaintiffs. On September 14, 2004, Defendants requested a continuance of the hearing, arguing that: 1) because the Amended Complaint added plaintiffs, it rendered the Motion for Preliminary Injunction before the Court "stale" such that there was no pending Motion for Preliminary Injunction before

the Court; and 2) because Planned Parenthood filed the Amended Complaint during the hearing and Defendants had not had time to read it or respond to it, Defendants were thereby prejudiced.

The Court held that the Amended Complaint related back to the time of the filing of the original Complaint, and that the Motion for Preliminary Injunction was therefore not stale.[2] The Court then proceeded with the hearing. Consequently, the Court will consider the Amended Complaint to be the relevant complaint for purposes of the Motion for Preliminary Injunction.

Generally, this Court has federal question jurisdiction to consider a case, such as this one, where Plaintiffs challenge an alleged deprivation of a Constitutional right by a State law. *See* 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). Nevertheless, this Court would lack jurisdiction to proceed if, as Defendants contend, Plaintiffs lack standing to pursue this case. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, this Court must consider Plaintiffs' standing before reaching the merits of Plaintiffs' Motion for Preliminary Injunction.

■ Defendants cite *Women's Medical Prof. Corp. v. Taft,* 114 F.Supp.2d 664 (S.D.Ohio 2000) and *Women's Medical Prof. Corp. v. Voinovich,* 911 F.Supp. 1051 (S.D.Ohio 1995), *aff'd,* 130 F.3d 187 (6th Cir.1997), *cert denied,* 523 U.S. 1036, 118 S.Ct. 1347, 140 L.Ed.2d 496 (1998), for the proposition that the Court must evaluate

---

1. The Court has not had sufficient time to conduct a hearing on the Motion for Class Certification, as requested by both parties, before entering this Order. The Court intends to hold a hearing on the Motion for Class Certification following the entering of this Order and, if appropriate, to amend this Order consistent with its findings on class certification. As a provisional measure, the Court orders Defendant Attorney General Pe-

tro to send notice of this Order to all 88 members of the proposed defendant class described in Plaintiffs' Motion for Class Certification within 48 hours of entry of this Order.

2. The Court offered to extend the time for the hearing if Defendants requested more time to prepare for and respond to the Amended Complaint, which Defendants did not.

the standing of each individual plaintiff and that each plaintiff must establish standing in its or his/her own right. Contrary to Defendants' assertion, in both of these cases, once the court determined that at least one plaintiff physician had standing, the court dispensed with a standing inquiry regarding the other plaintiffs and permitted all plaintiffs to proceed. *See WMPC v. Taft*, 114 F.Supp.2d at 668; *WMPC v. Voinovich*, 911 F.Supp. at 1059. Thus, if the Court determines that any one of the Plaintiffs has standing, the Court has jurisdiction and may proceed with the case. *See Carey v. Population Services Int'l*, 431 U.S. 678, 682, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (recognizing that when at least one plaintiff has standing to challenge all aspects of asserted claims, a court need not determine the standing of other plaintiffs).

■ Defendants also contend that in order to establish standing, each Plaintiff must submit factual evidence for the Court to examine to determine if each of the Plaintiffs has met the standing requirements. Defendants would be correct if the Court were determining standing for the purposes of a final judgment on the merits. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130; *see also Okpalobi v. Foster*, 190 F.3d 337, 350 (5th Cir.1999) (controverted factual allegations supporting standing must be supported by evidence in cases proceeding to final judgment). When a court considers whether a plaintiff has standing to request a preliminary injunction or whether a plaintiff has standing pursuant to a motion to dismiss, however, standing is determined by analyzing the material allegations in the complaint, which must be accepted as true. *See Okpalobi*, 190 F.3d at 350 (courts analyze standing for both motions for preliminary injunction and motions to dismiss based on the material allegations of the complaint); *see also Haskell v. Washington Tp.*, 864 F.2d 1266, 1276 (6th Cir.1988) (reversing district court's grant of defendant's motion to dismiss on grounds that plaintiff lacked standing because allegations in complaint were sufficient to establish standing). The Court therefore determines whether Plaintiffs have standing for purposes of both the Motion for Preliminary Injunction and Allen's Motion to Dismiss by considering the allegations in Plaintiffs' Amended Complaint.

■ Standing involves two levels of inquiry: 1) whether the plaintiff has shown that a "case or controversy" exists, which can be shown by proving actual injury or injury in fact likely to be redressed by a favorable decision; and 2) whether the plaintiff is the proper proponent of the rights on which the action is based. *See Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir.1987). The Court will first consider the standing of the Physician Plaintiffs.

■ Dr. Kade is the medical director of Plaintiff Planned Parenthood Cincinnati Region and also has a private practice in Cincinnati. (Doc. #18, ¶ 10.) As part of her duties at PPCR, Dr. Kade performs evidence-based medical abortions with mifepristone, which Defendants contend is prohibited by the Act. (Kade Affidavit, ¶¶ 6,8.) If, after the Act took effect, Dr. Kade continued her practice of providing evidence-based abortions using mifepristone, Defendants would have authority to prosecute her under the Act, and Dr. Kade has attested that she fears such prosecution. (*Id.* at ¶ 11.) Thus, Dr. Kade has clearly alleged a case or controversy with Defendants regarding an injury likely to be redressed by a favorable decision. Thus, because Dr. Kade faces a direct risk of enforced prosecution by Defendants under the Act, she has standing to bring a pre-enforcement challenge to the Act. *See WMPC v. Taft*, 114 F.Supp.2d at 667–68; *WMPC v. Voinovich*, 911 F.Supp. at 1058.

■ Dr. Kade has also asserted standing to enforce her patients' rights. Courts have consistently held that physicians whose conduct is regulated by an abortion statute have standing to challenge those statutes on behalf of themselves and their patients. *See, e.g., Singleton v. Wulff,* 428 U.S. 106, 118, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *see also Planned Parenthood of Wisconsin v. Doyle,* 162 F.3d 463, 465 (7th Cir.1998) (Posner, J.) ("[t]he standing of the physician plaintiffs, and of Planned Parenthood as the owner of abortion clinics in Wisconsin, to maintain this suit is not open to question.") Physicians may bring suit on behalf of their patients due to: 1) the close relationship between women and their physicians; 2) the fact that in the context of abortion regulation, women's due process rights are inextricably bound up with the activity that a physician plaintiff wishes to pursue; and 3) the conclusion that women are faced with several obstacles to asserting their own rights. *See Singleton,* 428 U.S. at 117, 96 S.Ct. 2868; *see also WMPC v. Taft,* 114 F.Supp.2d at 668; *WMPC v. Voinovich,* 911 F.Supp. at 1058. All of these factors are present here.

The Court therefore finds that Dr. Kade has both individual and third-party standing and thus dispenses with inquiry into the remaining Plaintiffs' standing. Plaintiffs have made sufficient allegations in their complaint regarding standing both to withstand Allen's Motion to Dismiss and to allow the Court to proceed to the merits of Plaintiffs' Motion for Preliminary Injunction.

## III. LEGAL STANDARD

■ Federal Rule of Civil Procedure 65 authorizes the Court to grant a preliminary injunction. When deciding whether to issue a preliminary injunction, the Court considers four factors: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir.2000).

## IV. ANALYSIS

Plaintiffs challenge the Act on the following grounds: "the Act is unconstitutionally vague; the Act violates their patients' right to bodily integrity by compelling surgery in circumstances where a medical abortion [as opposed to surgical abortion] would otherwise be the desired or appropriate treatment; the Act lacks the constitutionally-mandated exception to allow otherwise restricted practices where they are necessary to preserve a woman's life or health; and, the Act imposes an undue burden on their patients' right to choose abortion by prohibiting a safe and common method of pre-viability abortion." (See doc. # 2, at 1.)

Plaintiffs allege that because of the former factors, Plaintiffs have a strong likelihood of success on the merits. Further, Plaintiffs allege that Planned Parenthood, Plaintiff Physicians, and their patients would face irreparable injury if the Act takes effect. (*Id.* at 18–19.) Specifically, Plaintiffs argue that because the Act is unconstitutionally vague, Plaintiff Physicians would be left to guess about whether they may legally provide medical abortions in certain instances. (*Id.* at 18.) Specifically, Plaintiffs state that Planned Parenthood and the Plaintiff Physicians have been providing medical abortions using an evidence-based protocol of mifepristone.[3]

---

**3.** Or in the case of Planned Parenthood of Central Ohio, intended to switch to an evi-

(See doc. # 18, ¶¶ 6–11.) This evidence-based protocol differs in several respects from the protocol which the FDA tested and on which it based its approval of mifepristone, including the dose of mifepristone and the dose and administration of its companion drug, misoprostol, and also allows for a medical abortion later in the term of pregnancy.[4] Plaintiffs note that the Act provides that physicians may prescribe mifepristone only in accordance with federal law, and that the Act includes the FDA approval letter within its definition of federal law. However, Plaintiffs also note that the FDA approval letter does not require physicians to adhere to any particular protocol, although the documents on the final printed labeling do discuss only the protocol that was tested by the FDA. (*Id.* at ¶ 38.) Thus, Plaintiffs argue that it is unclear whether the Act's inclusion of the FDA approval letter in the definition of federal law renders it illegal for a physician to prescribe the evidence-based protocol of mifepristone. Consequently, Plaintiffs argue that Plaintiff Physicians would face the threat of possible criminal prosecution and loss or suspension of their medical licenses if they continue to prescribe the evidence-based protocol of mifepristone. (*Id.* at ¶ 53.) Plaintiffs also argue that Plaintiff Physicians' patients would face irreparable harm because the Act may force some women seeking an abortion to forego medical abortion and undergo either surgical abortion or other more invasive procedures, which may be both riskier and more costly for a particular woman. (See doc. # 2, at 18–19.)

## A. Strong Likelihood Of Success On The Merits

 Though Plaintiffs bring four constitutional challenges to the Act, this motion can be resolved based upon just one of those: "the Act lacks the constitutionally-mandated exception to allow otherwise restricted practices where they are necessary to preserve a woman's life or health." (*See* doc. # 2, at 1.) As Plaintiffs note, a long line of Supreme Court authority mandates and reaffirms that the Due Process Clause of the Constitution requires that every statute regulating abortion include an exception for those situations where necessary, in appropriate medical judgment, to preserve the life and health of the mother. See *Stenberg v. Carhart,* 530 U.S. 914, 930–31, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000); *Roe v. Wade,* 410 U.S. 113, 163–65, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (striking down statute prohibiting abortion except where necessary to save a woman's life, and holding that post-viability, a state may regulate abortion except where it is necessary in appropriate medical judgment to preserve the life *and health* of the mother) (emphasis added); *see also Planned Parenthood v. Casey,* 505 U.S. 833, 846, 879–80, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (affirming that *Roe* "forbids a State to interfere with a woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health.") This health exception is required both post and pre-viability. *See Carhart,* 530 U.S. at 930, 120 S.Ct. 2597.

---

dence-based protocol, but suspended those preparations due to uncertainty regarding the meaning of the Act. (See doc. # 18, ¶ 8.)

4. The evidence-based protocol for medical abortion consists of a single oral dose of 200 mg of mifepristone followed by a single dose of .8 mg misoprostol administered vaginally, and is effective for medical abortion through at least 63 days after a woman's last menstrual period ("LMP"). The protocol for medical abortion that the FDA tested and on which it based its approval of mifepristone consisted of three oral doses of 200 mg of mifepristone followed by a single dose of .4 mg misoprostol also taken orally, through 49 days LMP.

Defendants argue, citing *Carhart,* that a health exception is required only where substantial medical authority supports the proposition that banning a particular procedure could endanger a woman's health. Defendants argue further that Plaintiffs "cannot sustain their burden" of showing that an abortion using mifepristone in a manner prohibited by the Act is ever necessary in appropriate medical judgment for the preservation of the life or health of the mother. Defendants therefore conclude that the Act does not require a health exception and is constitutional.

Defendants' arguments are misplaced. In *Carhart,* the Court considered a plaintiff's challenge to a Nebraska statute banning partial birth abortion. The Court held that the statute was unconstitutional both because it placed an undue burden on a woman's right to a pre-viability abortion, and because it lacked a health exception (the Nebraska statute contained only a "mother's life" exception). Like Defendants here, Nebraska argued that the statute did not require a health exception because there were alternative methods of abortion and the ban would create no risk to womens' health. *Id.* at 931, 120 S.Ct. 2597. The Court rejected this argument because "[Nebraska] fail[ed] to demonstrate that banning D & X without a health exception may not create significant health risks for women, because the record shows that significant medical authority supports the proposition that in some circumstances, D & X would be the safest procedure." *Id.* at 932, 120 S.Ct. 2597.

A tenable reading of the former statement might imply, as Defendants argue, that a health exception is required only where it is evident that the banned or regulated method of abortion is necessary at times to preserve the health and safety of the mother. Significantly, however, even if the Court intended to modify the mandatory health exception, the Court clearly placed the burden of proof not, as Defendants desire, upon a plaintiff to prove that a health exception is necessary, but rather upon a defendant to show that a ban or regulation would never cause any risk to a mother's health. Even if this Court were inclined to so read *Stenberg*—which it is not—Plaintiffs have still shown a strong likelihood of success on the merits because it is highly unlikely that Defendants will be able to prove that there are no circumstances in which the Act's regulation of mifepristone would cause significant health risks. Plaintiffs have already presented expert medical testimony at the hearing that there are women who have medical conditions that render surgical abortion riskier than the evidence-based protocol for medical abortion, which Defendants argue is prohibited under the Act. (Tr. 9/13/04, Schaff test., 52:1–58:25; Tr. 9/14/04, Sogor tes., 23:15–25:5)

Also, despite the former analysis of Defendants' argument, the Court finds that the appropriate reading of *Carhart*—and the one consistent with Supreme Court precedent—is that a health exception is always required. Indeed, the *Carhart* Court expressed the health exception requirement as an independent proposition in several other places in the opinion. While the scope of the necessary health exception is debated—not only by the parties here, but also by lower federal courts' case law—this Court need not reach this question because the Act lacks *any* exception for the life or health of the mother. Consequently, Plaintiffs have a substantial likelihood of success on the merits that the Act violates the Due Process Clause and is unconstitutional.

## B. Irreparable Injury

Because this Court has found that the Act threatens or impairs Plaintiffs' patients' constitutional right to Due Process,

the Court must find that Plaintiffs and their patients' will suffer an irreparable injury if the preliminary injunction does not issue. *See ACLU of KY. v. McCreary County, Kentucky,* 354 F.3d 438, 445 (6th Cir.2003), citing *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (affirming district court's grant of preliminary judgment for plaintiffs who alleged violation of their First Amendment rights); *see also Overstreet v. Lexington–Fayette Urban County Gov't,* 305 F.3d 566, 578 (6th Cir.2002) ("[c]ourts have also held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights.") Thus, this factor of the preliminary injunction inquiry weighs in favor of granting Plaintiffs' Motion for Preliminary Injunction.

### C. Substantial Harm to Others

Because Plaintiffs have shown a substantial likelihood of success on the merits on the ground that the Act is unconstitutional, "no substantial harm to others can be said to inhere in its enjoinment." *See Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville,* 274 F.3d 377, 400 (6th Cir.2001), *citing Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir.1998). Thus, this factor of the preliminary injunction inquiry weighs in favor of granting Plaintiffs' Motion for Preliminary Injunction.

### D. Public Interest

"'It is always in the public interest to prevent violation of a party's constitutional rights.'" *Id.* at 400, *citing G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir.1994). Thus, the public interest factor of the preliminary injunction inquiry also weighs in favor of granting Plaintiffs' Motion for Preliminary Injunction.

## V. CONCLUSION

Because Plaintiffs have demonstrated a strong likelihood of success on the merits regarding an alleged violation of their constitutional rights, the other factors to consider in granting a preliminary injunction automatically weigh in Plaintiffs' favor. Because Plaintiffs have made sufficient allegations in their complaint to establish standing, and because all four factors to consider in issuing a preliminary injunction weigh heavily in favor of doing so, this Court **DENIES** Defendant Allen's Motion To Dismiss (doc. #28) and **GRANTS** Plaintiffs' Motion for Preliminary Injunction (doc. #2). The Court hereby **ENJOINS** Defendants from enforcing the Act.

IT IS SO ORDERED.