NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0092n.06
Filed: February 6, 2007

No. 05-6179

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOHNNY E. PINGLETON, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and COOK, Circuit Judges; WEBER, District Judge.*

COOK, Circuit Judge. Johnny Pingleton challenges his various drug-related convictions. We affirm.

I

In late 2003, Pingleton and Tim Harding began to conspire to manufacture methamphetamine: Harding allowed Pingleton to use his barn as a drug laboratory in exchange for a share of the drugs produced. In early 2004, Kentucky police caught Pingleton in possession of methamphetamine, and Pingleton admitted to the police that he had recently manufactured

_____

*The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

methamphetamine with Harding at Harding's residence. The police released Pingleton in exchange for his promise to notify them when Harding next manufactured drugs. Soon thereafter, the police visited Harding's residence to serve a summons and found a methamphetamine lab, chemical precursors of the drug, and finished product. During this visit, they arrested Lisa Witt and interviewed Harding's minor son, who told police that Pingleton had paid him to remove pseudoephedrine pills from blister packs to make methamphetamine. Harding was not present, but Kentucky police arrested him days later. And about a month later, Ohio police arrested Harding (having been released by Kentucky), Witt, Satica Vance, and John Rodefer, who were returning from Indiana, where they had bought materials to manufacture methamphetamine.

A grand jury initially indicted Harding, Witt, and Rodefer (but not Pingleton) for conspiring to manufacture methamphetamine (among other offenses). Harding and Witt pleaded guilty and agreed to cooperate, and the government filed a Superseding Indictment charging, in relevant part, that "Johnny E. Pingleton and John E. Rodefer did conspire" to manufacture methamphetamine. The government then filed a Second Superseding Indictment charging the conspiracy between Pingleton and Rodefer in the same language (Count I), and also charging Pingleton with several substantive violations of the federal drug laws (Counts II, III, IV). During discovery, the government provided Pingleton with Witt's statement implicating Pingleton in a conspiracy involving Harding and also stated its intent to rely on Pingleton's statement to Kentucky police that he had manufactured methamphetamine with Harding. A jury convicted Pingleton on the conspiracy count and the substantive counts, but acquitted Rodefer on the conspiracy count.

II

Count IV of the Second Superseding Indictment charged Pingleton with "possess[ing] a measurable quantity of pseudoephedrine, a List I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance," in violation of 21 U.S.C. § 841(c)(2).[1] Pingleton unsuccessfully moved for acquittal, arguing that the government failed to prove that pseudoephedrine is a "list I chemical" (which Pingleton asserts is an essential element of the offense) because it offered no proof on the issue and the district court did not take judicial notice of it. When reviewing the denial of a motion for acquittal, the question is "whether the evidence was sufficient to submit the case to the jury at the completion of the evidence for the United States." *United States v. Nabors*, 901 F.2d 1351, 1357 (6th Cir. 1990). We hold that the district court properly denied the motion for acquittal: federal law defines pseudoephedrine as a "list I chemical," so no evidence was necessary to prove this point.

Pingleton's claim is squarely governed by *United States v. Wynn*, 987 F.2d 354 (6th Cir. 1993). In *Wynn*, the defendant was charged with using an interstate commerce facility to solicit murder, in violation of 18 U.S.C. § 1958. 987 F.2d at 355. Section 1958 requires "intent that a murder be committed in violation of the laws of any State or the United States." At Wynn's trial, the government "did not present any evidence which showed that murder violates the laws of the

---

[1]A "list I chemical" is a chemical used in and important to the manufacture of a controlled substance. 21 U.S.C. § 802(34). Pseudoephedrine is a "list I chemical," *id.* § 802(34)(K), that is used to make methamphetamine.

State of Tennessee." *Wynn*, 987 F.2d at 356. But this court upheld the district court's denial of Wynn's motion for acquittal, reasoning that "[o]ur judicial system requires the prosecution to prove facts, not laws." *Id.* at 358. The prosecution thus did not need to prove that murder was against the laws of Tennessee, even though it is a component of the federal crime. *Id.* Pingleton's case is analogous. That pseudoephedrine is a "list I chemical" is surely a component of the charge under 21 U.S.C. § 841(c)(2), but it is a legal component, not a factual component. Pseudoephedrine is a "list I chemical" because federal law defines it as such, not because the jury so finds it on a case-by-case basis. *See* 21 U.S.C. § 802(34)(K). Therefore, the government did not need to offer any evidence that pseudoephedrine is a "list I chemical," and we reject Pingleton's challenge.[2]

III

Count I of the indictment charged that "Johnny E. Pingleton and John E. Rodefer did conspire to knowingly and intentionally manufacture fifty grams or more of methamphetamine." In Pingleton's view, this language alleges that he and Rodefer conspired with each other—and no one else—such that when the district court allowed the government to introduce evidence of a conspiracy involving other persons, this was an impermissible "constructive amendment" of the indictment. Applying de novo review, *see United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998), we discern no constructive amendment to the indictment.

---

[2]We note also that nothing was improper in the district court's failure to take judicial notice that pseudoephedrine is a "list I chemical." *See Wynn*, 987 F.2d at 358 ("[T]he phrase 'judicial notice' applies to facts, not laws.").

To establish a constructive amendment, Pingleton must show that both the evidence offered at trial and the jury instructions "effectively alter[ed] the terms of the indictment and modifie[d] the essential elements of the charged offense . . . ." *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006). Since both the government's proof and the jury instructions referred to a conspiracy involving two *or more* persons, this case turns on whether the Second Superseding Indictment charged a conspiracy involving two *or more* persons.

Count I charged that "Johnny E. Pingleton and John E. Rodefer did conspire to knowingly and intentionally manufacture fifty grams or more of methamphetamine." Typical conspiracy indictments, however, add restrictive language such as "with each other" or expansive language such as "with others known and unknown." Like the district court, we are troubled by the atypical wording the government employed here and do not sanction the future use of similarly phrased indictments. Nonetheless, under the particular circumstances of this case, we conclude the indictment charges a conspiracy involving two or more persons.

On one hand, as a linguistic matter, we agree with the government that the words "did conspire" need not be read restrictively to exclude other actors from the conspiracy.[3] On the other

---

[3]Pingleton argues (unpersuasively) that as a linguistic matter, the words "did conspire" necessarily limit the charged conspiracy to two people. Neither of the cases cited in his brief support this position because in both, the indictment contains language limiting the verb that describes the illegal action. *See United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1991) (defendants "did combine, conspire, agree and have a tacit understanding with one another"); *United States v. Salinas*, 654 F.2d 319, 323 n.7 (5th Cir. Unit A Aug. 1981) (defendants aided and abetted "each other").

hand, some confusion arises in this case because the indictment lists two (and only two) actors, Pingleton and Rodefer. *Expressio unis est exclusio alterius*, Pingleton might argue. But under the circumstances of this case, we conclude that the indictment should be read to charge a conspiracy involving two *or more* persons. First, the government provided Pingleton with discovery evidence indicating that the charged conspiracy was not limited to him and Rodefer. The government stated its intent to rely on Pingleton's own statement to police that he had manufactured methamphetamine with Harding and also provided Pingleton with Witt's statement that Pingleton had conspired with Harding. This clarifies any linguistic ambiguity in the indictment and forecloses any argument that Pingleton lacked notice that the charged conspiracy included co-conspirators beyond Rodefer. Second, not to construe this indictment to charge a conspiracy involving two or more persons might create tension with the general rule that the prosecution need not furnish co-conspirators' names as long as the defendant has notice of the conspiracy with which he is charged. *See United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991) (citing *United States v. Piccolo*, 723 F.2d 1234, 1239 (6th Cir. 1983)); *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (citing *Rey*). Here, Pingleton had adequate notice that the conspiracy was not limited to him and Rodefer. For these reasons and under these particular circumstances, we hold that the indictment charged a conspiracy involving two or more persons, and thus there was no constructive amendment.[4]

---

[4]Although it does not, strictly speaking, inform our construction of the indictment, we note that the trial court twice asked whether Pingleton had requested a bill of particulars. Pingleton never did, which diminishes the force of any argument that he lacked notice of the charges against him.

IV

Pingleton also complains generally about his trial. He cites no legal authority and struggles to articulate a theory, and we discern no claim on which he could prevail.

First, Pingleton complains that the government's witnesses were not credible. This could be viewed as a challenge to the sufficiency of the evidence, but if so, it fails. In reviewing the sufficiency of the evidence, an appellate court "may not consider the credibility of witnesses." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). Pingleton argues that the fact that the government did not file a substantial-assistance motion under Sentencing Guidelines § 5K1.1 on behalf of Tim Harding suggests that Harding was not credible. Plausible as that may sound, this court still cannot review Harding's credibility when assessing the sufficiency of the evidence against Pingleton.

Second, Pingleton complains that he was convicted while Rodefer was acquitted, which could be viewed as a complaint of "inconsistent verdicts." But upon closer inspection, Pingleton does not complain that Rodefer's conspiracy acquittal is inconsistent with his conspiracy conviction; instead, he complains only of prejudice "as to Counts II, III, and IV." There is nothing logically inconsistent in the conclusion that Pingleton committed several substantive offenses but Rodefer did not criminally conspire with anyone.

Third, Pingleton complains that the introduction of evidence on the conspiracy count (Count

I) somehow prejudiced him as to the substantive counts (Counts II, III, IV). If he means to argue there was insufficient evidence to convict on the substantive counts, but the jury convicted him anyway on the basis of evidence admitted on the conspiracy count, this claim fails. "We presume, unless the defendant carries a strong burden of showing to the contrary, that the jury is 'capable of sorting out evidence and considering each count and each defendant separately.'" *United States v. Rugiero*, 20 F.3d 1387, 1391 (6th Cir. 1994) (quoting *United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987)). Record testimony supports Pingleton's conviction on the substantive counts, and his only attempt to meet the heavy burden of *Rugiero* is by attacking the credibility of the witnesses who gave this testimony. As stated above, this court "may not consider the credibility of witnesses" when reviewing the sufficiency of the evidence. *Jamieson*, 427 F.3d at 402. If he means to argue (as suggested at oral argument) that if we reverse the conspiracy conviction, we must also reverse the convictions on the substantive counts as tainted by evidence admitted on the conspiracy count, Pingleton fares no better because we affirm the conspiracy conviction.

V

For these reasons, we affirm Pingleton's conviction.