**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0641n.06

**No. 07-5299**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR THE |
| | ) EASTERN DISTRICT OF TENNESSEE |
| MICHAEL VASSAR, | ) |
| | ) |
| Defendant-Appellant. | ) |

Before: COLE and COOK, Circuit Judges; COHN, District Judge.[*]

COOK, Circuit Judge. A jury convicted Michael Vassar of conspiring to distribute and to possess with the intent to distribute less than five hundred grams of cocaine, in violation of 21 § U.S.C. 846, 841(a)(1), and 841(b)(1)(A), and of distributing cocaine, in violation of 21 §§ U.S.C. 841(a)(1) and 841(b)(1)(C). Vassar appeals his conviction and sentence. For the reasons that follow, we affirm.

**I. Background**

Vassar was arrested in August 2005 after investigators recorded him selling 6.61 grams of cocaine to Rick Fann, an associate of Vassar's who had agreed to cooperate with authorities. A grand jury indicted Vassar for distributing cocaine (Count 3), and—along with Dewey Lynn Phillips,

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

James Mark Thornton, and Michael Charles Gunter—for conspiring to distribute and to possess with

the intent to distribute five kilograms of cocaine (Count 1). The jury found Vassar guilty as charged

in Count 3, and guilty of conspiring to distribute and to possess with the intent to distribute less than

500 grams of cocaine, acquitting him of conspiring to distribute and possess more than 500 grams

of cocaine. The district judge, after calculating a Guidelines range of 168 to 210 months, sentenced

Vassar to 144 months' imprisonment. Vassar now appeals.

## II. Vassar's Conviction

## A. Sufficiency of the Indictment

Vassar raises numerous challenges to his conviction, arguing first that Count 1 of his

indictment was insufficient, a matter we review de novo. *United States v. Gatewood*, 173 F.3d 983,

986 (6th Cir. 1999). Specifically, Vassar claims that Count 1 is unconstitutionally vague because

it alleges that the conspiracy began "on or before January 1, 2004" and that it involved "others

known and unknown to the grand jury." He further protests its failure to allege that the conspiracy

was unlawful or that his participation was knowing and voluntary.

Count 1 reads as follows:

From on or before January 1, 2004, until on or about August 24, 2005, within the
Eastern District of Tennessee, the defendants, DEWEY LYNN PHILLIPS, JAMES
MARK THORNTON, MICHAEL CARL VASSAR, MICHAEL CHARLES
GUNTER, and others known and unknown to the grand jury, did conspire,
confederate and agree with each other and others both known and unknown to

distribute and to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A).

We find this language sufficient. "An indictment is sufficient 'if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Mohney*, 949 F.2d 899, 903 (6th Cir. 1991) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Courts have found indictments insufficient where they are open-ended as to both beginning and end dates, *see United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979), but sufficient where they fix the end of the conspiracy and provide an approximate start date, *see United States v. Hultgren*, 713 F.2d 79, 89 (5th Cir. 1983); *United States v. Simmons*, No. 96-4196, 1998 WL 231103, at *1, 1998 U.S. App. LEXIS 8222, at *3–4 (7th Cir. Apr. 27, 1998); *United States v. Mitchell*, 765 F.2d 130, 133 (10th Cir. 1985). And this court has observed that conspiracy indictments typically charge "others known and unknown to the grand jury;" such language does not render an indictment unconstitutionally vague. *See United States v. Pingleton*, 216 Fed. App'x 526, 529 (6th Cir. 2007).

Vassar's remaining challenges to the indictment also lack merit. *See United States v. Barnes*, No. 90-5165, 1991 WL 1336, at *5, 1991 U.S. App. LEXIS 506, at *14 (6th Cir. Jan. 10, 1991) (indictment need not specify that defendant "knowingly" committed offense because "[i]t is well settled that an indictment for conspiring to commit an offense need not allege with technical

precision all the elements essential to the commission of the offense which is the object of the conspiracy") (citing *United States v. Reynolds*, 762 F.2d 489, 494 (6th Cir. 1985) (internal citation and quotation marks omitted)). The district court therefore correctly denied Vassar's motion to dismiss Count 1.

## B. Sufficiency of the Evidence

Next, Vassar argues that the evidence does not suffice to sustain his conviction for conspiracy to distribute cocaine. This challenge fails if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To prove a conspiracy under 21 U.S.C. § 846, the government must demonstrate "(1) an agreement to violate drug laws . . . ; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). The agreement need not be formal; a "tacit or material understanding among the parties" is enough. *Id.* (quoting *United States v. Avery*, 128 F.3d 966, 970–71 (6th Cir. 1997) (internal quotation marks and citation omitted)).

Numerous witnesses testified to Vassar's participation in the conspiracy. Stacy Lynn Phillips and Dewey Lynn Phillips said that they sold multiple-kilogram quantities of cocaine to Vassar from 2003 through the summer of 2005. According to Stacy Phillips, up until late summer or early fall 2003, Vassar bought a kilogram of cocaine from him every few weeks and claimed to be reselling it. Dewey Phillips testified that between January 2004 and mid-summer 2005, he sold Vassar an

average of one kilogram per month, and that Michael Gunter told Dewey that he bought cocaine from Vassar. Daniel Rice stated that he purchased over two kilograms of cocaine, partially for resale, from Vassar between May 2004 and January 2005. Melissa Thomas witnessed Vassar distributing what appeared to be cocaine at a local bar. Finally, Rick Fann testified that Vassar sold him cocaine beginning in early 2005. The evidence sufficiently supports Vassar's conspiracy conviction.

Despite all this testimony, Vassar urges us to vacate his conspiracy conviction because the jury "most likely" based its finding of guilt on the recorded sale of 6.61 grams of cocaine to Fann, who was cooperating with the government. Vassar correctly observes that an agreement with a government agent cannot constitute an unlawful conspiracy. *See United States v. Pennell*, 737 F.2d 521, 536 (6th Cir. 1984). In support of his argument, he notes that Count 3 involved a transfer of cocaine to Fann, and that the jury convicted him of conspiring to distribute less than 500 grams of cocaine, even though the evidence of the conspiracy involving the Phillipses and others indicated more than 500 grams of cocaine. Vassar relies on *Yates v. United States*, 354 U.S. 298 (1957), for the proposition that the law "requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 311–12.

*Yates* does not support Vassar's claim. In *Yates*, the jury instructions included a "theory of conviction . . . [that was] contrary to law." *Griffin v. United States*, 502 U.S. 46, 59 (1991); *see*

*Yates*, 354 U.S. at 311. Here, by contrast, the indictment and Judge Greer's instructions accurately stated the law; indeed, Vassar does not contend otherwise. The prosecutor, as Vassar concedes, described the conspiracy to the jury as involving Stacy and Dewey Phillips selling Vassar cocaine that he then sold to others, and the evidence supports the conviction for this conspiracy. *See United States v. Newton*, 389 F.3d 631, 636–37 (6th Cir. 2004) (upholding defendant's conspiracy conviction despite testimony of government agent because evidence sufficed to show conspiracy between defendant and other non-cooperating coconspirators).

Additionally, contrary to Vassar's assertion, it does not follow from his acquittal for conspiracy involving more than 500 grams that the jury "rejected the Phillips conspiracy." The jury may have found beyond a reasonable doubt Vassar's participation in the conspiracy with the Phillipses, but remained unconvinced that the conspiracy involved over 500 grams of cocaine. *See United States v. Jackson*, 473 F.3d 660, 669–70 (6th Cir. 2007) (evidence sufficiently supported conviction involving less than 50 grams of cocaine, even though witnesses testified to more than 50 grams, because "[t]he jury might have concluded that each of the government's witnesses was somewhat—but only somewhat—credible, and discounted the testimony accordingly"). We therefore reject Vassar's sufficiency-of-the-evidence argument.

## C. Bill of Particulars

Vassar also challenges the adequacy of the bill of particulars. In his motion before the trial court, Vassar requested (among other things) disclosure of the name and address of each known but

unnamed co-conspirator, the date he joined the conspiracy, and the date and place of each of his acts in furtherance of the conspiracy. The magistrate judge ordered a BOP on the meaning of the phrase "on or before January 1, 2004" in Count 1, but otherwise denied Vassar's motion. Vassar asserts that the court erred; we disagree. We review for an abuse of discretion. *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004).

A bill of particulars is "a tool to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool . . . to obtain detailed disclosure of all evidence held by the government before trial." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). In challenging the district court's denial of a motion for a bill of particulars, "the defendant must show not only that the court abused its discretion, but that defendant actually suffered surprise or other prejudice at trial." *Id*. at 1375.

First, Vassar argues that the district court erred by failing to grant his motion with respect to the identities of unnamed coconspirators in the indictment. He claims that this deficiency prevents him from "plead[ing] former jeopardy if charged again . . . with an unnamed co-conspirator." But the government "is not required to furnish the name[s] of all other co-conspirators in a bill of particulars." *Crayton*, 357 F.3d at 568. And to the extent Vassar argues he was surprised by the government's use of any other alleged coconspirators as witnesses, the inclusion of "others known and unknown" in the indictment provided Vassar with sufficient notice. *Id*.

Second, he argues the government's statement regarding the dates of the conspiracy in the bill of particulars to be insufficient. The bill of particulars explained that the phrase "on or before January 1, 2004" "simply reflects that the exact date the conspiracy arose was unknown to the government and the grand jury although the conspiracy was clearly in existence since on or about January 2004." The bill further clarifies that the conspiracy began after April 18, 2002. Vassar complains that this statement mislead him because it deprived him of notice that the prosecution would present Stacy Phillips as a witness testifying to a conspiracy in 2003.

Vassar fails to show that the government inadequately responded to the magistrate judge's order. The bill of particulars accounted for the "on or before" phrasing, and further limited the conspiracy to after April 18, 2002. And as we explained, an indictment that is open-ended as to beginning dates but not end dates suffices. *See, e.g.*, *Hultgren*, 713 F.2d at 89. Vassar cannot use a bill of particulars "to obtain detailed disclosure of all evidence held by the government before trial." *Salisbury*, 983 F.2d at 1375.

Even assuming the government's bill of particulars was inadequate, any error was harmless. *See United States v. Williams*, 962 F.2d 1218, 1226 (6th Cir. 1992) (conducting harmless error review where government allegedly failed to comply with bill of particulars order). Vassar asserts he had no notice that the government would present Stacy Phillips as a witness testifying to a 2003 conspiracy, but the record reveals the contrary. Vassar identified Stacy Phillips as a coconspirator

cooperating with the government in his motion for subpoenas, dated February 1, 2006. The district court did not err.

**D. Motion to Question the Jury Foreman**

Vassar next argues that the district court erred by denying his request to question the jury foreman about the basis of the conspiracy verdict. He claims that the jury may have based its decision on Vassar's transaction with Fann, and that the trial judge's refusal to question the jury therefore violated his right to a complete defense. We review for an abuse of discretion. *United States v. Corrado*, 304 F.3d 593, 603 (6th Cir. 2002).

We think that Judge Greer correctly concluded that Federal Rule of Evidence 606(b) barred him from granting Vassar's motion. Rule 606(b) prohibits jurors from testifying:

> as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

*See also United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995) ("A jury's interpretation and application of the court's instructions is a part of the deliberative process . . . correctly excluded under Rule 606(b)."). For policy reasons, courts disfavor interrogations into the jury process. *See, e.g.*, *United States v. Logan*, 250 F.3d 350, 379 (6th Cir. 2001). Rule 606(b) permits a juror to testify

about prejudicial information or outside influence "improperly brought to the jury's attention," but Vassar made no such showing here. The district court properly denied Vassar's motion.

**E. Admission of Coconspirator's Statements**

Vassar claims that the district court erred by allowing Dewey Phillips to testify about statements made by co-defendant Michael Gunter. The district court allowed the testimony pursuant to Federal Rule of Evidence 801(d)(2)(E), which provides that: "[a] statement is not hearsay if . . . [it] is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." To properly admit such statements, "it must first be determined that the conspiracy existed, that the defendant was a member of the conspiracy, and that the co-conspirator's statements were made 'in furtherance of the conspiracy.'" *United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir. 1992) (en banc) (quoting *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979)). We review for clear error. *Id.*

Vassar asserts that Gunter's statement that Vassar said Gunter might be able to get drugs from Dewey Phillips was "insufficient to establish a conspiracy," but he offers no argument. And as the district court reasoned: "The statement . . . attributed to Mr. Vassar, that Mr. Phillips might be able to help Mr. Gunter, clearly is an effort to continue the illegal conspiracy; that is, Mr. Phillips becoming a source of the cocaine rather than Mr. Vassar." Vassar next argues that there was "not a scintilla of evidence" of the conspiracy other than Gunter's statements, violating the rule that "[t]he contents of the statement . . . are not alone sufficient to establish . . . the existence of the conspiracy

and the participation therein of the declarant and the party against whom the statement is offered."

Fed. R. Evid. 801(d)(2). Vassar is mistaken that no evidence existed. Stacy Phillips testified that

he obtained kilograms of cocaine for Vassar to distribute, and Dewey Phillips said that he sold

Vassar a kilogram of cocaine monthly in 2004 and 2005, and that he sold a kilogram of cocaine to

Gunter. Such evidence suffices for Rule 801(d)(2) purposes. *See United States v. Pierce*, 62 F.3d

818, 827 (6th Cir. 1995) (observing that the court needs only "*some* independent, corroborating

evidence" in order to admit the coconspirator's statements).

Finally, Vassar contends Dewey Phillips's testimony that Vassar no longer sold drugs at the

time Phillips spoke with Gunter "defeated [his] being a member of [the] alleged conspiracy,"

rendering Gunter's statements inadmissible. *See* Fed. R. Evid. 801(d)(2)(E) (statement must be

made "during the course . . . of the conspiracy."). But "[e]ven assuming that [Vassar] was no longer

an active participant in the conspiracy . . . he is nonetheless presumed to be a continuing member,

and is chargeable for the subsequent acts of co-conspirators, so long [as] the conspiracy was ongoing

and [Vassar] did not establish his affirmative withdrawal from the conspiracy." *United States v.*

*Robinson*, 390 F.3d 853, 882 (6th Cir. 2004). The district court did not err by admitting Gunter's

out-of-court statements.

## F. Admission of Fann's Recorded Statement

Citing *Crawford v. Washington*, 541 U.S. 36 (2004), Vassar next argues that the district court

violated his Sixth Amendment Confrontation Clause rights by admitting a recorded hearsay

statement made by Rick Fann. But a statement is hearsay only if offered to prove the truth of the

matter asserted. *See* Fed. R. Evid. 801(c). In the recording at issue, Fann leaves a voicemail for

"Mike" stating that he is looking to obtain a couple of car windows. At trial, Fann testified that he

and Vassar spoke in code about drug transactions, using car parts to represent cocaine. The

recording thus demonstrated that Fann made statements to Vassar about cars—it was not submitted

to prove the truth of Fann's statements. Indeed, the government acknowledged that Fann's statement

was "on its face false." The admission of Fann's voicemail message therefore did not implicate

Vassar's Confrontation Clause rights. *See Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The

nonhearsay aspect [of an out-of-court statement] . . . raises no Confrontation Clause concerns.").

## G. Rule 17(c) Subpoenas

Vassar faults the district court for quashing a host of subpoenas he issued under the ostensible

authority of Federal Rule of Criminal Procedure Rule 17(c). A party may use Rule 17(c) subpoenas

to obtain documents if (1) the items are evidentiary and relevant; (2) the items are not otherwise

procurable through due diligence prior to trial; (3) the party cannot properly prepare for trial without

such pre-trial production and inspection; and (4) the application is made in good faith and is not a

fishing expedition. *United States v. Nixon*, 418 U.S. 683, 699 (1974). But such subpoenas are not

intended to provide a means of discovery for criminal cases, *United States v. Justice*, 14 F. App'x

426, 432 (6th Cir. 2001), and the decision to enforce or quash a pretrial subpoena under Rule 17(c)

rests with the district court and will be disturbed on appeal only where the action was clearly

arbitrary or without support in the record. *United States v. Hughes*, 895 F.2d 1135, 1145 (6th Cir. 1990).

Vassar's subpoenas sought records, documents, and computer data from various law enforcement agencies concerning the criminal activities of eight potential witnesses against him. After reviewing the subpoenas' content, the district court held that they failed to satisfy the requisite criteria, largely because they sought internal investigative files and general impeachment evidence, neither of which is a proper subject for a Rule 17(c) subpoena. *See United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) (inadmissible hearsay materials not subject to Rule 17(c) subpoena); *Nixon*, 418 U.S. at 701 ("the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."). At the same time, however, the district court ordered production of certain documents and clarified that it placed no restrictions on Vassar's use of compulsory process to obtain witnesses or documents for presentation at trial (and, in fact, Vassar later availed himself of this opportunity). On appeal, Vassar identifies no error in the district court's analysis. Because the court properly limited Vassar's use of Rule 17(c) subpoenas to prevent him from embarking upon a costly and time-consuming fishing expedition, we conclude that no abuse occurred.

## H. Prosecutorial Misconduct

Vassar complains of four statements from the prosecutor's closing argument, claiming that each one constitutes prosecutorial misconduct entitling him to a new trial. Only one of the

statements drew an objection. We review that statement for an abuse of discretion, *United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000), and the others for plain error, *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001). A two-step analysis applies to prosecutorial misconduct claims. First we determine whether the prosecutor's statements were improper, and then, if they were, we decide whether the statements were flagrant in light of four factors: (1) whether they tended to mislead the jury or prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately made; and (4) the strength of the evidence against the defendant. *United States v. Jackson*, 473 F.3d 660, 670 (6th Cir. 2007).

Vassar suggests that the prosecutor's references to "other controlled substances" in his summary of Fann's testimony was improper because the judge had specifically ordered Fann to refer only to "another substance" when testifying about the other drug he said he ordered from Vassar, but this argument misrepresents the record. The district judge instructed Fann to refer to a "controlled substance" rather than specifically identifying the drug as methamphetamine. The prosecutor's statements squared with both Fann's testimony and the judge's orders; thus, Vassar's argument lacks merit.

Next, Vassar accuses the prosecutor of committing misconduct by "improperly [telling] personal stories about his childhood." The prosecutor urged the jury not to consider the possible guilt or punishment of others, illustrating his point with a personal anecdote involving his own attempts as a child to escape punishment for his misconduct by emphasizing his brother's

malfeasance.  The defense employed a strategy of deflecting attention from Vassar's conduct toward that of his coconspirators.  The prosecutor responded to this strategy by imploring the jurors not to consider the guilt of others but to focus on the actions of the accused.  In an effort to elucidate this (entirely proper) argument, the prosecutor used an example from his own past.  In doing so, he did not express any personal opinion as to the defendant's guilt, nor was the story calculated to inflame the jury.  As such, no impropriety occurred.

Vassar also protests the prosecutor's characterization of defense arguments as "red herrings" and "creative fiction."  This court (like many others) frequently uses the term "red herring" to describe a fallacious argument that distracts from the truth, *see, e.g.*, *United States v. Urrieta*, 520 F.3d 569, 582 (6th Cir. 2008), and has expressly approved a prosecutor's use of the same term in situations similar to this one, *United States v. Moreno*, 899 F.2d 465, 468 (6th Cir. 1990).  Likewise, the prosecutor's use of "creative fiction" in reference to defense's contention that an audio recording somehow evinced Fann and Vassar sniffing cocaine constituted a proper means of suggesting to the jury that, based upon the evidence presented at trial, the argument was implausible and unworthy of belief.  *See United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996) ("[C]ounsel must be given leeway to argue reasonable inferences from the evidence.").

Finally, during closing argument, the prosecutor remarked that "no one involved in this narcotics trafficking is going to escape justice."  This drew an objection from Vassar, and on appeal he challenges this statement as an improper expression of personal opinion.  The government rebuts

Vassar's argument with two points.  First, the record lends some support to the statement—a government agent had testified about pending charges against Stacy Phillips, one of Vassar's coconspirators.  Second, the comment should be tolerated because the prosecutor made it in response to Vassar's argument that the government permitted more culpable individuals to avoid prosecution in exchange for testifying against him.  *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) ("Case law permits comments that are made in response to the argument and strategy of defense counsel.") (internal quotation marks and citation omitted).  Although we find the government arguments persuasive, we need not decide this issue.  Even if the comment suffers from some impropriety, it was an isolated remark unlikely to cause prejudice and therefore does not warrant a new trial.  *See United States v. Carter*, 236 F.3d 777, 788 (6th Cir. 2001) (excusing improper comments as mere isolated remarks).  Because all of the statements fall short under the *Jackson* factors, we reject Vassar's claim.

**I.  Jury Instructions**

This court "review[s] jury instructions as a whole to determine whether they adequately inform the jury of relevant considerations and provide a sound basis in law to aid the jury in reaching its decision." *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999).  We review for an abuse of discretion, and reverse only where the instructions fail to accurately reflect the law or, if "viewed as a whole, [they] were confusing, misleading, or prejudicial." *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000) (internal quotation marks and citation omitted).

Vassar challenges several of the district court's instructions. First, he asserts that he "was entitled to a charge on his theory of defense" for Count 3. Judge Greer instructed the jury that Vassar denied distributing cocaine "on or about June 16, 2005 as charged," but Vassar complains that the judge should have told the jury that Vassar admitted to drug addiction from 2004 to 2005, he used cocaine on June 16, 2005 with Rick Fann, and his "only offense" was simple possession. The law, however, does not entitle Vassar to such an instruction. The district court need not use a defendant's language in an instruction if its own "is accurate and sufficient." *United States v. Mack*, 159 F.3d 208, 218 (6th Cir. 1998) (internal quotation marks and citation omitted). Vassar's proposed instruction does not constitute a statement of law, but rather represents a denial of the charges and Vassar's view of the facts. The district court did not commit reversible error in declining to give this instruction. *Id.* (no error where instruction is not a statement of law but only an explanation of what defendant would have stated had he testified); *United States v. Chowdhury*, 169 F.3d 402, 407 (6th Cir. 1999) (no reversible error where defense's proposed instruction was not a "distinct legal theory" but merely "a recitation of [Defendant's] view of the facts").

Second, Vassar claims that the district court erred by refusing to give a "buyer-seller instruction." He argues that such instructions are mandatory "when raised by the evidence" and failure to give the instruction confused the jury "as to the difference between a buyer-seller relationship and a conspiracy." Here, the government presented evidence of repeat purchases of large drug quantities—evidence that supports a finding of a conspiracy, not of a mere buyer-seller relationship. *See United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003). And "a conviction will

not be reversed for failure to give a buyer-seller instruction where the district court gave complete instructions on the elements of conspiracy." *United States v. Musick*, 291 F. App'x. 706, 730 (6th Cir. 2008) (citing *Riggs v. United States*, 209 F.3d 828, 833 (6th Cir. 2000)). The district court did not err in refusing to give this instruction.

Third, Vassar asserts that the district court should have included the names of the co-defendants in the court's jury instruction pertaining to the conspiracy charged in Count 1 of the indictment. The district court, following both the indictment and pattern instruction, listed the co-defendants charged in the indictment in its instruction and told the jury that, to return a guilty verdict, it must find Vassar a member of the conspiracy charged in the indictment. The instruction accurately stated the law, and Vassar offers no argument to the contrary nor any authority to support his claim that the district court erred. The district court properly instructed the jury on the conspiracy count. *See id*. (court not required to instruct the jury that a conspiracy cannot exist between defendant and a government agent where "conspiracy involved multiple other persons with whom it was legally possible for appellant to conspire").

Finally, he challenges Judge Greer's refusal to instruct the jurors on simple possession. Vassar appears to acknowledge that the district court correctly denied his request with respect to Count 3, because simple possession is not a lesser-included offense of distribution of a controlled substance. *See United States v. Colon*, 268 F.3d 367, 376–77 (6th Cir. 2001). Instead, he argues that the district court erred by refusing this instruction for Count 1. But simple possession also does not

constitute a lesser-included offense of conspiracy to distribute and possess with intent to distribute cocaine. *See id*. at 376. Thus, Vassar's claim lacks merit. We conclude that the district court did not abuse its discretion in instructing the jury.

## III. Vassar's Sentence

### A. Relying on Acquitted Conduct at Sentencing

Vassar disputes the district court's decision to find a fact that differed from a jury-found fact. Specifically, the district court found that he "was involved in the distribution or conspiracy to distribute between 3.5 to 5 kilos of cocaine," while the jury found Vassar not guilty of conspiring to distribute more than 500 grams. According to Vassar, this amounted to sentencing him "for an incorrect conspiracy offense of conviction" in violation of both the Sixth Amendment and the principles of issue preclusion. Appellant's Br. at 65–68. We disagree.

As for his Sixth Amendment jury-trial right challenge, Vassar fundamentally misunderstands the meaning of a jury's acquittal. An acquittal is not a finding of innocence, but merely a negative statement that the evidence fell short of purging the jury's reasonable doubts and therefore could not sustain a conviction. *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc). For Sixth Amendment purposes, this is the important point: The jury found Vassar guilty of conspiring to distribute less than 500 grams of cocaine, and that verdict alone exposed Vassar to a maximum sentence of 30 years' imprisonment. 21 U.S.C. §§ 841(a)(1) & 846. Although the district court,

- 19 -

in selecting a sentence within the range authorized by the statute of conviction, not only relied on acquitted conduct but also used a preponderance standard, this does not run afoul of the Sixth Amendment. The district court neither sentenced Vassar for acquitted conduct nor imposed its sentence under an incorrect statute of conviction. *See White*, 551 F.3d at 385. Thus, Vassar's Sixth Amendment challenge fails.

Vassar is correct that sentencing courts "cannot rely on a finding that directly conflicts with the jury's verdict." *United States v. Cockett*, 330 F.3d 706, 711 (6th Cir. 2003). But here, given the differing standards of proof, there is no conflict. Again, the district court found by a *preponderance of the evidence* that the conspiracy involved more than 500 grams of cocaine, while the jury found that the evidence did not overcome its *reasonable doubt*. These findings do not conflict.

The differing standards of proof also doom Vassar's issue-preclusion argument. According to Vassar, "issue preclusion and collateral estoppel prohibit[ed] Judge Greer from acting as a trier of fact to find a conspiracy object different from the object found by the jury."[1] This argument is flawed. Issue preclusion, which bars the relitigation of a previously decided issue, only operates if, among other requirements, the previously decided issue is "identical" to the current issue. *N.L.R.B. v. Master Slack and/or Master Trousers Corp.*, 773 F.2d 77, 81 (6th Cir. 1985). Here, because the standards of proof differed, the issue at trial was not identical to the issue at sentencing, and the

---

[1]Vassar's brief wrongly implies a distinction between issue preclusion and collateral estoppel; those are merely different names for the same doctrine. *Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985).

jury's acquittal therefore did not preclude the district court's drug-weight finding.

**B. Procedural and Substantive Reasonableness**

Vassar challenges his sentence as procedurally and substantively unreasonable. We begin with his procedural claims, finding that only one merits discussion. Vassar maintains that Amendment 709 to § 4A1.2 of the Sentencing Guidelines, issued several months after his sentencing hearing, retroactively undermines the district court's criminal history calculation. Not so. The district court correctly sentenced Vassar under the version of the Guidelines in effect at the time of sentencing, *United States v. Murillo-Iniguez*, 318 F.3d 709, 714 (6th Cir. 2003), and Amendment 709 does not apply retroactively, *United States v. Wood*, 526 F.3d 82, 88 (3d Cir. 2008); *United States v. Marler*, 527 F.3d 874, 877 n.1 (9th Cir. 2008); *see also United States v. Smith*, 307 F. App'x 966, 969 (6th Cir. 2009) (citing *Wood* and *Marler* with approval in dicta).

Turning to Vassar's substantive claims, we start by presuming the reasonableness of Vassar's below-Guidelines sentence. *United States v. Bailey*, 264 F. App'x 480, 485 (6th Cir. 2008) (Just as we presume the reasonableness of a within-Guidelines sentence, "it follows from simple logic that [a] below-Guidelines sentence . . . is presumed not to be unreasonably severe."). Vassar fails to rebut this presumption. He first argues that, compared to his coconspirators' sentences, his below-Guidelines sentence reflects an unwarranted disparity in violation of 18 U.S.C. § 3553(a)(6). And this disparity, so the argument goes, is the product of "prosecutorial misconduct by selective application manipulating the USSGs." Appellant's Br. at 62. We disagree.

"Disparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008). Here, an important difference justifies the disparity that Vassar challenges—Vassar's coconspirators accepted responsibility for their criminal conduct and cooperated with law enforcement; Vassar did not. Accounting for that difference—both in the prosecutor's charging determinations and in the court's sentencing decisions—neither evidences prosecutorial misconduct nor contravenes substantive reasonableness.

And more generally, because Vassar's sentence fell below the Guidelines' recommendation, his unwarranted disparity claim stands on especially shaky ground. The Seventh Circuit has observed that "it is pointless" for defendants who receive within-Guidelines sentences to raise unwarranted-disparity claims. *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008); *see also United States v. Kirchhof*, 505 F.3d 409, 416 (6th Cir. 2007). The Guidelines exist to help ensure that similarly-situated defendants are punished similarly. *United States v. Boscarino,* 437 F.3d 634, 638 (7th Cir. 2006). Thus, "[s]entencing disparities are at their ebb when the Guidelines are followed. . . . The more out-of-range sentences that judges impose . . . , the more disparity there will be. A sentence within a properly ascertained range therefore cannot be treated as unreasonable by reference to § 3553(a)(6)." *Id*. This rationale applies with greater force to defendants like Vassar, who receive a below-Guidelines sentence.

Vassar nevertheless insists, despite the absence of supporting evidence, that prosecutors "secretly manipulated" his coconspirators' sentences. Even if that allegation were true—Vassar offers nothing suggesting it is—it would not change our review here, which concerns only Vassar's sentence. The district court, addressing Vassar's prosecutorial misconduct and unwarranted disparity claims at the sentencing hearing, clearly articulated the flaw in Vassar's position:

> Your attorney . . . doesn't argue that somehow the government has made your sentence potentially higher through its charging decisions; he argues that the government has made others' sentences lower than the real conduct justified. I frankly don't see how you or any defendant in your situation can legitimately complain that somebody else has gotten a lesser sentence. To the extent that the government's charging decisions or plea bargaining decisions result in disparities, it seems to me that is up to the congress to address or the public to address; and that to [grant a larger downward variance in this case] would simply require this court to lower all sentences down to the level of the most lenient sentence that's been imposed. I don't think that's what the law requires . . . and I reject that as a legitimate consideration in sentence.

Sentencing Tr. 173–74. We agree with the district court. That his coconspirators may have received lesser sentences does not by itself prove that Vassar's sentence is unreasonably severe, but is just as likely to show that his coconspirators were sentenced too leniently. And accepting Vassar's position would create a race to the bottom in sentencing, forcing district courts to select increasingly lenient sentences.

Vassar also attacks his sentence's substantive reasonableness on the ground that, in his estimation, his conduct does not qualify as a "per se a serious offense," but instead amounts to

nothing more than a "casual exchange of drugs." This characterization belittles the seriousness of Vassar's actions and belies the record in this case, which supports the district court's finding that Vassar trafficked at least 3.5 kilos of cocaine. Sentencing Tr. at 171. Vassar's 144-month sentence, which is well below the Guidelines range of 168 to 210 months, already includes a large downward variance, and he fails to show that his situation is so extraordinary as to require an even larger variance. We reject Vassar's substantive reasonableness challenges.

## C. Discovery at Sentencing

Vassar takes issue with the district court's decision denying him discovery for sentencing purposes. Appellant's Br. at 72–73. Vassar does not, however, specify the information he would have sought in discovery. Nor does he explain how the publically available sources of information proved inadequate for his purposes, a defect that other circuit courts have relied on in affirming denials of sentencing discovery. *See, e.g.*, *United States v. Spotted Elk*, 548 F.3d 641, 672 (8th Cir. 2008) (affirming decision denying defendant access to his coconspirators' PSRs). Vassar merely maintains that Federal Rule of Criminal Procedure 32(i)(4)(ii) and U.S.S.G. § 6.A1.3 support his discovery requests. We read those rules more narrowly.

Rule 32(i)(4)(ii), rather than providing a broad right to discovery, only requires a sentencing court "to address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." The rule, in other words, allows defendants to present the information they have.

Nor does U.S.S.G. § 6.A1.3 aid Vassar. That Guideline tells us, among other points, that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." *Id.* U.S.S.G. § 6.A1.3 mentions nothing concerning discovery.

In the absence of express statutory authority, and without explicit guidance from the Sentencing Commission, we leave the matter of sentencing discovery to the district court's sound discretion. And because we discern no abuse of discretion here, we reject Vassar's discovery arguments.

Vassar makes a related argument that U.S.S.G. § 6.A1.3 somehow constrains the timing of sentencing hearings. More specifically, he says that the district court erred by "set[ting] Vassar's sentencing after co-conspirators who were not asserting §3553(a)(1)(6) disparity, [thereby failing] to provide Vassar an adequate opportunity to present relevant information." Appellant's Br. at 73–74 (internal quotation marks omitted). Vassar again runs roughshod over the actual language of U.S.S.G. § 6.A1.3, which says nothing about scheduling sentencing hearings.

Vassar raises other arguments challenging his conviction and sentence. We have considered those arguments and view them as lacking.

AFFIRMED.