RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

WILLIAM R. KLOPFENSTEIN,

            *Plaintiff*,


LORI LASKARIS; DANIEL LASKARIS; BRIAN C. HARRISON; JANET FYOCK; ADAM MCKINNEY; DONALD E. ADANICH, on behalf of themselves and all others similarly situated,

     *Plaintiffs-Appellants/Cross-Appellees*,


  *v.*


FIFTH THIRD BANK,

   *Defendant-Appellee/Cross-Appellant*.

Nos. 24-3955/3974

─────────────────

Certification of Question of Law to the Supreme Court of Ohio

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:12-cv-00851—Michael R. Barrett, District Judge.

Argued: February 4, 2026

Decided and Filed: May 29, 2026

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Hassan A. Zavareei, TYCKO & ZAVAREEI LLP, Washington, D.C., for Appellants/Cross-Appellees. Craig D. Singer, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Hassan A. Zavareei, Glenn E. Chappell, TYCKO & ZAVAREEI LLP, Washington, D.C., Jason K. Whittemore, WAGNER MCLAUGHLIN & WHITTEMORE, PA, Tampa, Florida, Stuart E. Scott, SPANGENBERG SHIBLEY & LIBER, Cleveland, Ohio, for Appellants/Cross-Appellees. Craig D. Singer, Enu A. Mainigi, Steven M. Pyser, Erin M. Sielaff, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee/Cross-Appellant.

---

**ORDER OF CERTIFICATION TO THE SUPREME COURT OF OHIO**

---

READLER, Circuit Judge. In 2008, Fifth Third Bank began offering a cash-advance program called "Early Access." The program enabled customers to "advance" money into their checking accounts (otherwise known as a loan). When a deposit was next made into a customer's account, Fifth Third would withdraw the loan amount plus 10%.

Fifth Third disclosed this 10% "transaction fee" in its standard Early Access terms and conditions, which form the contract at the heart of this dispute. In accordance with the requirements of federal law, the bank also disclosed that these loans had a 120% annual percentage rate. But there was a disconnect between these statements: Because the loans were repaid whenever customers next received a deposit into their accounts, the lengths of the loans were variable, meaning that it was impossible to calculate a standard APR for all loans. As a result, the vast majority of customers paid an APR higher than 120%.

Based on this allegedly misleading APR term, William Klopfenstein sued the bank for breach of contract on behalf of a class of Early Access users. At trial, a jury agreed with Klopfenstein that Fifth Third breached the contract but, in the end, found that the bank was not liable for the breach due to the voluntary-payment defense, an Ohio law equitable defense to a breach-of-contract claim. *See State ex rel. Dickman v. Defenbacher*, 86 N.E.2d 5, 7 (Ohio 1949) (per curiam). As the Ohio courts have explained the defense, if a plaintiff "with full knowledge of the relevant facts" pays the defendant, "such payment cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *City of Cleveland v. Ohio Bureau of Workers' Comp.*, 109 N.E.3d 84, 114–15 (Ohio Ct. App. 2018) (quoting *Dickman*, 86 N.E.2d at 7) (*City of Cleveland I*), *rev'd on other grounds*, 152 N.E.3d 172 (Ohio 2020) (*City of Cleveland II*). On appeal, the class contends that Fifth Third could not assert the voluntary-payment defense under Ohio law because the class members made a mistake of *fact*, not *law*. Ohio's cases on the matter, however, point in all directions. As a result, we sua sponte

certify to the Supreme Court of Ohio the questions set forth below in accordance with Supreme Court of Ohio Rule of Practice 9.02.

I.

A.  At issue here is a misleading term in Fifth Third Bank's Early Access loan-service agreement.  The provision at issue, which is part of a short-term lending program offered by the bank, instructs Fifth Third account holders that "[t]he transaction fee is $1 for every $10 borrowed.  This equates to an Annual Percentage Rate (APR) of 120%."  R. 137-1, PageID 1638 (emphasis omitted).

How did this service work in practice?  A customer could "advance" money to her checking account (up to a maximum of $1,000, depending on the customer's average direct-deposit amount).  The amount of the loan plus the 10% transaction fee would then be withdrawn from the customer's account the next time the account received a deposit of $100 or more.  If no such deposit occurred within 35 days, Fifth Third would automatically withdraw the loan amount plus 10% from the customer's account at the end of that period.

Here is where issues arise.  APR, described as "the cost of your credit as a yearly rate," is a required disclosure for this contract under 12 C.F.R. § 1026.18(e), a Consumer Financial Protection Bureau regulation implementing the Truth in Lending Act (or TILA), 15 U.S.C. § 1601 *et seq.*  Because APR is an annualized measure of the cost of credit over time, and as the nominal cost of this credit is a flat 10%, the actual APR turns on how quickly the customer repays the loan.  In other words, with the nominal cost of the loan fixed, the faster a customer repays the loan, the greater her APR.  Consider the following example.  Burke and Caroline each borrow $500 through the Early Access program.  Burke pays his loan back in 10 days.  His APR would be:  $0.10 \times (365/10) \times 100 = 365\%$.  Caroline, by contrast, pays her loan back in 30 days.  Her APR would be:  $0.10 \times (365/30) \times 100 = 121.7\%$, essentially the 120% listed in Fifth Third's disclosure.  So although Burke pays his loan off faster, his cost measured as APR is higher.

In such situations, TILA requires Fifth Third to state that the APR disclosure is an estimate.  *See* 12 C.F.R. § 1026.17(c)(2)(i).  Rather than taking that approach, Fifth Third defined APR in the contract in a roundabout manner.  The account agreement stated that the

APR for the service was "calculated by dividing the transaction fee by the Advance amount and multiplying the quotient by the number of statement cycles within a year." R. 137-1, PageID 1641. The contract expressed this mathematically as "0.1% x 12 cycles = 120% APR." *Id.* Putting aside a modest error (the % after 0.1 appears to be a typo), this formula means that the APR would always come out to 120%. That conclusion, however, conflicts with the agreement's statement that the "APR is a measure of the cost of credit, expressed as a yearly rate." *Id.*; *see also In re Fifth Third Cash Advance Litig.*, 925 F.3d 265, 277 (6th Cir. 2019) (explaining that the APR formula in the contract conflicts with the "expressed as a yearly rate" definition because the formula is "untethered to a year or any other time period").

To sum up, the core problem with the contract is that it offers customers conflicting potential prices. One, the flat 10% fee, and the other, 120% APR. All customers were charged the 10% fee, but the APR varied for most customers because the actual APR fluctuated based on when customers repaid their loans.

B. William Klopfenstein, a Fifth Third customer, sued the bank. Two of his claims are relevant to this appeal: an Ohio law breach-of-contract claim and a federal misleading-disclosure claim under TILA. These claims mirrored similar lawsuits that have been filed against other banks. *See, e.g.*, *Small v. BOKF, N.A.*, No. 13-cv-01125, 2014 WL 3906257, at *2 (D. Colo. Aug. 7, 2014). The theory of Klopfenstein's breach claim was that by charging customers an APR greater than 120%, Fifth Third breached the price term of the contract. Klopfenstein's TILA claim, on the other hand, was based on the allegation that Fifth Third violated federal regulations by providing inaccurate APR disclosures.

The district court dismissed the breach-of-contract claim on the grounds that "the Terms & Conditions are unambiguous in their explanation as to the method for calculating the APR." R. 89, PageID 1192. To allow Klopfenstein an opportunity to appeal its decision while his TILA claim remained pending, the court entered final judgment on the breach claim under Federal Rule of Civil Procedure 54(b).

On appeal, we reversed the district court's dismissal of the breach-of-contract claim. *See In re Fifth Third*, 925 F.3d at 280. Because the contract defined APR in conflicting ways, we

held that the contract was facially ambiguous, thereby precluding resolution of the contract claim at the motion to dismiss stage.  *Id.*  Judge Larsen would have affirmed on the basis that Klopfenstein received the benefit of the bargain of the contract because he and all other customers paid the 10% fee they were promised.  *See id.* at 281 (Larsen, J., concurring in part and dissenting in part) (citing *JNT Props., LLC v. Keybank Nat'l Ass'n*, 981 N.E.2d 804, 806–07 (Ohio 2012)).

On remand, the district court certified a breach-of-contract class in accordance with Federal Rule of Civil Procedure 23(b)(3).  The district court also granted summary judgment to the class on its TILA claim.  That claim has generated its own appeal, one that remains pending, which revolves around the millions of dollars of attorney's fees at stake.  *See Klopfenstein v. Fifth Third Bank*, No. 25-3258.  The district court, however, denied competing motions for summary judgment on the breach-of-contract claim.

The parties then proceeded to trial on the contract claim, with the class seeking over $443 million in damages.  During the trial, the class twice moved for judgment as a matter of law on the voluntary-payment issue—once after its case-in-chief and once after Fifth Third's case.  The district court denied each motion.

Both parties submitted proposed jury instructions.  Each disagreed with the district court's eventual instructions on a few fronts.  Consider here the class's objections.  First, the district court rejected the class's proposed instruction that Fifth Third had to prove that the fee tied to the advance was paid with "full and actual knowledge" that the APR was over 120%.  R. 221, PageID 6525.  The district court likewise declined to instruct the jury that Fifth Third had violated TILA and, separately, that the jury should not consider the class representatives' post-lawsuit actions when deciding whether customers had full knowledge when making payments.  Finally, the district court rejected the class's proposed verdict form.

The jury's verdict ultimately favored Fifth Third.  Through its findings, the jury agreed with the class that Fifth Third breached the contract.  But it then agreed with Fifth Third that the voluntary-payment doctrine applied, barring the class's recovery.  Following the verdict, the district court refused to submit to the jury a special interrogatory requested by the class, one that

would have asked the jury at what date the class made its payments with full knowledge of the facts.  After the entry of judgment, the class renewed its motions for judgment as a matter of law on the voluntary-payment defense and moved for a new trial.  The district court rejected those requests.

On appeal, the class challenges the denial of summary judgment on the breach-of-contract claim, the jury verdict in favor of Fifth Third based on the voluntary-payment defense, and the denial of its renewed motion for judgment as a matter of law and for a new trial.  Its arguments all fail except (potentially) with respect to the voluntary-payment defense.  As a result, the applicability of that defense here will determine whether we must reach the issues Fifth Third has raised in its protective cross-appeal.

## II.

A.  A federal court exercising its diversity jurisdiction applies state substantive law per *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  *See Berk v. Choy*, 146 S. Ct. 546, 552 (2026) (citing 28 U.S.C. § 1652).  Here, all parties agree that Ohio law governs.  But they disagree, understandably so, it seems, on how that law applies in this setting.  When a state's substantive law is not clear-cut, "a federal court's normal course is to make an *Erie* guess to determine how a state supreme court, if presented with the issue, would resolve it." *In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 461 (6th Cir. 2023) (citation modified).  But when that law is entirely "unsettle[d]," it can be difficult to formulate even a fair guess as to its application. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  In such instances, "rather than speculate, the better course . . . is to provide the" state's high court, in this case, the Supreme Court of Ohio, "with the opportunity" to address the question in the first instance through the certification process. *Am. Booksellers Found. for Free Expression v. Strickland*, 560 F.3d 443, 447 (6th Cir. 2009).  Doing so helps "further[] cooperative judicial federalism," *In re Nat'l Prescription*, 82 F.4th at 461 (citation modified), as well as preserve state sovereignty by ensuring that a state court has the controlling word on issues of that state's law, *see Scott v. Bank One Tr. Co.*, 577 N.E.2d 1077, 1079–80 (Ohio 1991) (per curiam).  Given these important considerations, we sometimes certify questions even if the parties have not requested as much. *See In re Nat'l Prescription*, 82 F.4th at 461.  As we have in the past, we again today exercise our inherent

certification authority.  *See, e.g.*, *id.*; *Am. Booksellers*, 560 F.3d at 447; *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 408 (6th Cir. 2008).

On the Supreme Court of Ohio's end of things, Rule of Practice 9.01 instructs that before the Supreme Court of Ohio will consider certification, there must be "a certification order finding there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent" from the court.  Ohio Sup. Ct. R. Prac. 9.01(A).  Guided by this command, we have previously certified questions to the Supreme Court of Ohio where a case raises "novel and unsettled" state-law issues, with a backdrop of conflicting state-court decisions, none of which is directly on point.  *In re Nat'l Prescription*, 82 F.4th at 461–62.  In those instances, "there is [not] 'a reasonably clear and principled course' to follow in lieu of certification."  *Id.* at 462 (quoting *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009)).  So "rather than speculate" about Ohio law, the better course is certification.  *Am. Booksellers*, 560 F.3d at 447.

B.    With these principles in mind, turn to our confusion over the status of Ohio's voluntary-payment defense.  And begin with what we know about the doctrine.  Its origins appear to be as a defense to assumpsit suits in Ohio's courts of equity before the merger of law and equity in the state.  *See, e.g.*, *Shelton v. Gill*, 11 Ohio 417, 419 (1842); *see also Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.*, 67 N.E.2d 906, 911 (Ohio 1946) (describing the defense as rooted in "principles of equity and natural justice").  The notion underlying the defense is that when faced with a "dispute in relation to the proper construction of . . . [a] contract," *City of Cincinnati v. Cincinnati Gaslight & Coke Co.*, 41 N.E. 239, 242 (Ohio 1895), a plaintiff who "cho[o]se[s] . . . to pay . . . cannot afterwards ask the law to rectify his mistake," even if the contract dispute should be resolved in his favor, *Vindicator Printing Co. v. State*, 67 N.E. 733, 735 (Ohio 1903).  In other words, a "payment[] cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay."  *Dickman*, 86 N.E.2d at 7.  Ohio courts, we note, have developed exceptions to this defense.  In particular, "fraud, duress, compulsion[,] or mistake of fact" excuse a voluntary payment.  *Id.*  But where a plaintiff had "full knowledge of the facts," a mere mistake of law will not defeat the defense. *City of Cleveland I*, 109 N.E.3d at 114.

Recall now the central issue in this case. The Early Access agreement's terms represented a 10% fee as being 120% APR. In practice, the class paid the 10% fee but varying APRs. Accepting those realities, Fifth Third nonetheless maintains that even if charging an APR higher than 120% was a breach of the contract, the class paid voluntarily with "full knowledge of the relevant facts." *Id.* at 115. And because the class at bottom made "an erroneous conclusion regarding the[] legal effect" of the 10% flat fee its members knowingly paid, the voluntary-payment defense bars recovery. *Id.* at 114. The class, by contrast, argues that its members did not have full knowledge of the relevant facts and, as a result, any mistake they made was a factual one, not a legal one, precluding Fifth Third from asserting this defense. *See Dickman*, 86 N.E.2d at 7.

Although the battle lines are clear, the weight of the legal authority is not. Neither party has cited a "controlling precedent" from the Supreme Court of Ohio. Ohio Sup. Ct. R. Prac. 9.01(A). Nor have we identified one. While Ohio's high court has articulated the general principles of the voluntary-payment defense, its decisions provide little specificity in application. Start with what we know. *Dickman* announces the broad statement that "[i]n the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." 86 N.E.2d at 7. But what constitutes a mistake of law as compared to a mistake of fact? "A payment made by reason of a wrong construction of the terms of a contract" is a mistake of law. *Cincinnati Gaslight*, 41 N.E. at 239 (syllabus). Meanwhile, a mistake of fact is a "mistaken supposition of the existence of a specific fact which would entitle the other [party] to the money." *Firestone Tire & Rubber Co. v. Cent. Nat'l Bank of Cleveland*, 112 N.E.2d 636, 642 (Ohio 1953) (quoting 40 *Am. Jur.* § 187).

In application, these lines become blurry—especially so in the modern age. The Supreme Court of Ohio has not addressed the voluntary-payment defense in over five decades. *See In re Kangesser*, 247 N.E.2d 724, 725–26 (Ohio 1969). And those earlier cases on the doctrinal canvas paint in such broad strokes that their color has faded with age, leaving them poor guides to the more current contractual arrangement at issue here. True, Ohio's high court has heard cases in recent years where voluntary payment was at issue in the original appeal, yet it has

repeatedly decided those cases on other grounds. *See, e.g.*, *City of Cleveland II*, 152 N.E.3d at 173; *Lycan v. City of Cleveland*, 218 N.E.3d 913, 915–16 (Ohio 2022) (plurality opinion). This case presents the voluntary-payment issue without some of the complicating procedural issues those other matters presented.

The Supreme Court of Ohio has said that payments made under the mistaken interpretation of the formula for calculating the price of gas in a contract qualify as a mistake of law. *See Cincinnati Gaslight*, 41 N.E. at 242. On the other hand, Ohio's court of last resort has categorized payments made based on misleading bills of lading as a mistake of fact. *See Firestone*, 112 N.E.2d at 645. But these cases, to our minds, tell us little about how to apply the voluntary-payment defense to contemporary contracts of adhesion like the one at issue here. They do not grapple with standardized consumer contracts containing conflicting terms—here price disclosures—where the contract itself obscures the operative terms and complicates the distinction between mistakes of fact and law. Is that sort of error a factual one—a misunderstanding of what price the contract actually sets? Or is it a legal one—a misapprehending of the consequences that flow from the contract's terms? As we understand the Supreme Court of Ohio's precedential backdrop, no decision has addressed a case close to the situation here, one with two potential, conflicting price terms, which blends both mistaken interpretations of a formula as well as payments made based on erroneous disclosures.

With the ubiquity of standardized contracts of adhesion in today's consumer markets, how the voluntary-payment defense applies in situations such as this one is an important question. *See* Nancy S. Kim, *Adhesive Terms and Reasonable Notice*, 53 Seton Hall L. Rev. 85, 86–87 (2022) (discussing the proliferation of standard-form contracts of adhesion). That said, from these past cases, we are reticent to guess at how Ohio's high court might apply the defense to the mass contracting in which Fifth Third was engaged. Not only are the earlier cases factually dissimilar to this one, but they also arose in a different economic context. Again, the voluntary-payment doctrine developed before law and equity merged in Ohio, during an era of predominantly individualized, face-to-face negotiation and agreement. As technology has changed, so too has our dominant manner of contracting. *See* Robert A. Hillman & Jeffrey J. Rachlinski, *Standard-Form Contracting in the Electronic Age*, 77 N.Y.U. L. Rev. 429, 431

(2002) (noting that even for old-school paper contracting, "ninety-nine percent . . . consist of standard forms" in the internet era). Today, many financial contracts involve the same issues present in this case: mass, standardized contracts of adhesion with government regulated terms. *See* David A. Hoffman, *Defeating the Empire of Forms*, 109 Va. L. Rev. 1367, 1377–88 (2023). We therefore question how to import the older principles of the voluntary-payment defense into this current form of contracting, especially in light of the lack of controlling precedent from the Supreme Court of Ohio.

This dearth of relevant opinions from Ohio's high court has the parties retreating to decisions from the Ohio Court of Appeals. These precedents are more numerous, likely because this is a recurring issue in Ohio law. Yet they fail to clear things up. To be sure, some have defined mistake of fact more precisely than the Supreme Court of Ohio. In one, for instance, the Ohio Court of Appeals adopted the *Black's Law Dictionary* definition of mistake of fact, understanding it as "a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in (1) an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or (2) belief in the present existence of a thing or material to the contract which does not exist, or in the past existence of such thing which has not existed." *Consol. Mgmt., Inc. v. Handee Marts, Inc.*, 671 N.E.2d 1304, 1307 (Ohio Ct. App. 1996). Invoking this authority, the class contends that the accuracy of a price term is a "fact . . . material to the contract" of which the class members were unconsciously ignorant. *Id.* Fifth Third, however, points to a different case, one in which the Ohio Court of Appeals suggested that "mistake[] as to the contract price" was a mistake of law rather than fact. *Indus. Fabricators, Inc. v. Nat'l Cash Reg. Corp.*, No. 83AP-13, 1984 WL 4669, at *4 (Ohio Ct. App. Mar. 8, 1984). And that reading comports with other cases that have stated that misinterpreting the price is a legal mistake. *See, e.g.*, *Cincinnati Gaslight*, 41 N.E. at 242; *Consol. Mgmt.*, 671 N.E.2d at 1307. In short, errors involving the price term have divided Ohio's intermediate courts despite (or perhaps because of) the issue's recurring nature.

From these dueling authorities, it is difficult to derive a uniform doctrinal understanding of mistakes of law and fact when it comes to price errors. Even looking solely at the results in voluntary-payment cases from the courts of appeal, we are unable to divine a rule that offers

clear guidance here.  Consider a few examples.  Overpayment of rent based on a miscalculation of the rent formula is a mistake of law.  *See Consol. Mgmt.*, 671 N.E.2d at 1307.  So too for a payment to the wrong estate based on a life insurance company's misreading of the contract when both the insured and beneficiary died.  *See Nationwide Life Ins. Co. v. Myers*, 425 N.E.2d 952, 955–56 (Ohio Ct. App. 1980).  Meanwhile, misunderstanding one's legal obligation to pay parking fines is a mistake of fact.  *See Lycan v. City of Cleveland*, 142 N.E.3d 210, 224 (Ohio Ct. App. 2019), *rev'd on other grounds*, 218 N.E.3d 913 (Ohio 2022) (plurality opinion).  Likewise, a university's payment of property taxes it had no obligation to pay because it had sold the property at issue is a mistake of fact.  *See Case W. Rsrv. Univ. v. Friedman*, 515 N.E.2d 1004, 1005 (Ohio Ct. App. 1986).  All told, Ohio's appellate courts sometimes cast legal blunders as mistakes of fact and factual errors as mistakes of law.  In the end, these authorities offer little guidance on how to resolve instances of two price terms, one of which is correct and one of which is not.  Looking beyond opinions from the Supreme Court of Ohio thus fails to clear the legal haze surrounding the voluntary-payment defense.

In sum, we struggle to isolate a unifying theory of the voluntary-payment defense that harmonizes the results in these cases, let alone a rule that reveals how the defense should apply when a contract contains two distinct but conflicting price terms.  Rather than guessing at whether the defense applies in this novel situation, we believe the best course is to allow the Supreme Court of Ohio to determine whether the doctrine covers this recurring scenario.  *See In re Nat'l Prescription*, 82 F.4th at 462.

III.

Beyond the voluntary-payment defense, the class raises several other reasons why it should prevail on appeal.  None is persuasive.  We address them, however, to assure the Supreme Court of Ohio that the questions we certify regarding the voluntary-payment defense "may be determinative of the proceeding."  Ohio Sup. Ct. R. Prac. 9.01(A).

Before diving into the class's remaining arguments, we pause for a brief note about an underlying assumption.  Many of the class's contentions go to the heart of the parties' dispute over voluntary payment—whether knowledge of the APR was required or whether knowledge of

the 10% fee was enough. But the class was either entitled to judgment as a matter of law on the voluntary-payment defense or it was not (a question, again, we believe is best answered by Ohio's court of last resort). If the former is the case, then we need not resolve the class's remaining arguments; the voluntary-payment issue would justify reversing and remanding, although whether for entry of judgment in the class's favor or for a new trial would depend on our resolution of Fifth Third's protective cross-appeal. By contrast, if the voluntary-payment defense is available to Fifth Third, then the APR is not necessarily a fact of which the class members needed to have knowledge. And in that case, we must confront the class's other complaints about the trial. So, assuming for purposes of argument that the actual APR was not legally required knowledge, we turn to the class's remaining objections.

A. The class first contends that even if the voluntary-payment defense was available to Fifth Third as a matter of law, there was insufficient evidence to support the jury's verdict applying the defense, meaning that the class was entitled to judgment in its favor or, at the very least, a new trial. With respect to the class's request for judgment in its favor, because this is a diversity case, Ohio's standard for granting a directed verdict governs our analysis. *In re Brown*, 342 F.3d 620, 626 (6th Cir. 2003) (citing *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998)). Ohio law, in turn, instructs that we review de novo "whether the non-moving party adduced evidence of substantial probative value in support of each element of her claims." *Jarupan v. Hanna*, 878 N.E.2d 66, 70 (Ohio Ct. App. 2007) (citing, *inter alia*, *Est. of Cowling v. Est. of Cowling*, 847 N.E.2d 405, 413 (Ohio 2006)). By contrast, the federal standard controls whether a new trial is appropriate. *In re Brown*, 342 F.3d at 627 (citing *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 818 (6th Cir. 1999)). Directed by federal law, we ask whether the district court's refusal to grant the class's motion for a new trial based on the weight of the evidence was an abuse of discretion. *Barnes v. City of Cincinnati*, 401 F.3d 729, 743 (6th Cir. 2005) (citing *United States v. Alpine Indus., Inc.*, 352 F.3d 1017, 1026 (6th Cir. 2003)). So long as the jury's determination "was not against the manifest weight of the evidence," a district court does not abuse its discretion in denying a motion for a new trial. *Id.*

Assuming that the voluntary-payment defense was available as a matter of law, there was ample evidence to support the jury's application of the defense. Numerous witnesses testified

that members of the class knew they were paying a 10% fee.  The class, in fact, does not dispute as much.  Instead, it rehashes the points it made regarding which facts are relevant for the voluntary-payment defense.  But if knowledge of the 10% fee is all that the defense required under Ohio law, the jury's determination that the class had full factual knowledge was not unreasonable, and its verdict was not against the weight of the evidence.  The district court was therefore not required to grant the class judgment as a matter of law or a new trial based on the sufficiency of the evidence Fifth Third adduced at trial.

B.  Next, the class argues that the district court erred in the instructions it gave to the jury. We review the legal content of a jury instruction de novo.  *United States v. Pritchard*, 964 F.3d 513, 522 (6th Cir. 2020) (citing *United States v. Roth*, 628 F.3d 827, 833 (6th Cir. 2011)).  A district court's refusal to give a requested instruction, however, is evaluated only for an abuse of discretion.  *United States v. LaVictor*, 848 F.3d 428, 453–54 (6th Cir. 2017) (citing *United States v. Ursery*, 109 F.3d 1129, 1136 (6th Cir. 1997)).  In conducting that review, we read the instructions as a whole.  *See Frye v. CSX Transp., Inc.*, 933 F.3d 591, 600 (6th Cir. 2019) (citing *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 726 (6th Cir. 2006)).  Under this holistic approach, a new trial is warranted only when "(1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case."  *Id.* (quoting *Johnson Controls*, 459 F.3d at 726).  Even then, the complaining party must demonstrate that "the instructions," taken together, "were confusing, misleading, or prejudicial."  *Johnson Controls*, 459 F.3d at 726 (quoting *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000)).

1.  The class first takes issue with the district court's refusal to instruct the jury that it could apply the voluntary-payment defense only if it found that the class members had full knowledge that the loans had APRs exceeding 120%.  The court's jury instruction on voluntary payment instead told the jury that "a payment is not voluntary when the plaintiff pays without full and actual knowledge of the facts.  Defendant contends Plaintiffs cannot recover, as they paid for these loans with the full understanding of all relevant facts.  Plaintiffs deny that they had a full understanding of all relevant facts."  R. 270, PageID 8629.

Assuming once more that Fifth Third could assert the voluntary-payment defense, the jury could determine that the APR was not a relevant fact for voluntary-payment purposes. As a result, the omitted language was not a correct statement of the law. Instead, it went to the central dispute between the parties over the defense (i.e., which facts were relevant for knowledge), and the district court had no obligation to give an instruction that merely represented one side's view of the facts. *See United States v. Blanchard*, 618 F.3d 562, 574 (6th Cir. 2010) (citing *United States v. Vassar*, 346 F. App'x 17, 26 (6th Cir. 2009)). On the assumption that knowledge of the APR was not a necessary fact for the voluntary-payment defense to apply, the district court did not abuse its discretion by refusing to insert the class's preferred understanding of the case into the instructions.

2. The class next contends that the district court ought to have instructed the jury that Fifth Third violated TILA because the APR of the loans exceeded 120%. To our knowledge, however, we have never held that a district court abuses its discretion in declining to include instructions about a claim resolved at summary judgment. The class tacitly admits as much, relying on three out-of-Circuit (and unpublished) district court opinions stating that such instructions are proper when it provides context for the claim before the jury. But without any guidance from this Court, it is difficult to say it was a clear error of judgment or misapplication of law for the district court to decline to follow those courts. *See United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021) ("An abuse of discretion occurs when the district court 'relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law.'" (quoting *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020))); *cf. United States v. Araña*, 844 F. App'x 834, 838 (6th Cir. 2021) (no abuse of discretion for not following the approach of district courts in other jurisdictions). Especially so, we note, when we held in the parties' prior appeal that the TILA and breach-of-contract claims respectively raised distinct legal issues because they stemmed from "different acts or omissions" and resulted in different injuries. *In re Fifth Third*, 925 F.3d at 274 (determining these were distinct claims for Rule 54(b) purposes).

Even were that not the case, the failure to give the proposed instruction did not result in prejudice to the class. The jury heard plenty of evidence that the true APR of the loans exceeded 120%. In fact, Fifth Third did not meaningfully contest that the APR for most loans was not equal to 120%. It instead focused on whether the class members were charged the 10% fee that they were promised. We thus deem it unlikely that failing to instruct the jury that the district court ruled at the summary-judgment stage that the loans exceeded 120% APR (when that point was already apparent) misled the jury or prejudiced the class.

3. Lastly, the class takes issue with the district court's instruction that the jury may "consider actions by the named Plaintiffs after they filed suit that have been admitted into evidence." R. 270, PageID 8629. At trial, the district court, over the class's objection, allowed Fifth Third to question the class representatives about their post-suit actions, including continued participation in the Early Access program. The instruction in turn permitted the jury to consider the evidence that the questioning elicited. The class believes that post-suit payments are irrelevant to the applicability of the voluntary-payment defense. That may well be true. *See Arlington Video Prods., Inc. v. Fifth Third Bancorp*, 569 F. App'x 379, 390 (6th Cir. 2014) (suggesting pre-payment knowledge is the proper period of inquiry). But as the class did not appeal the admission of that evidence, we are hard pressed to say the district court committed a legal error by allowing the jury to consider it. In other words, it is not a reversible mistake for a district court to instruct the jury that it may consider evidence whose admissibility no party on appeal contests.

C. Relatedly, the class contests the verdict form that the district court adopted. Abuse-of-discretion review governs the class's challenge. *Johnson Controls*, 459 F.3d at 727 (citing *Bills v. Aseltine*, 52 F.3d 596, 605 (6th Cir. 1995)). And we see no such abuse. The class initially requested that the form include an interrogatory asking, "Did Plaintiffs and the Class voluntarily pay for Early Access loans with full and actual knowledge that the Annual Percentage Rate or APR was higher than 120%?" R. 221-1, PageID 6540. The district court rejected that formulation and instead asked, "Did Defendant prove by the greater weight of the evidence that the voluntary payment doctrine applies to the class?" R. 270-1, PageID 8640.

The district court did not abuse its discretion in disregarding the class's proposal. The court offered substantial guidance to the jury in the instructions about the voluntary-payment doctrine. Looking holistically at the instructions and interrogatory given, the class's proposed interrogatory was not necessary to remind the jury what the voluntary-payment defense entailed. The instructions were already more than enough to accomplish that task. Further, although the class's proposed interrogatory assumed that the relevant knowledge for the defense was knowledge of the APR, that conclusion was something the parties contested at trial. The district court was not required to adopt an interrogatory that embraced one side's argument. *See Blanchard*, 618 F.3d at 574 (citing *Vassar*, 346 F. App'x at 26).

D. Finally, the class objects to the district court's refusal to ask a special interrogatory after the jury rendered its verdict, an issue that we likewise review for abuse of discretion. *Tschira v. Willingham*, 135 F.3d 1077, 1089 (6th Cir. 1998) (citing *United States v. Franks*, 511 F.2d 25, 38 (6th Cir. 1975)). The class proposed that, before the jury was discharged, it be asked: "At what point in time or . . . []date[] do you find that the class made payment with full knowledge of all factual circumstances relating to Fifth Third's breach of the APR term?" R. 277, PageID 9028. The class believes this special interrogatory was necessary because the jury's answers on breach and voluntary payment were inconsistent. This interrogatory, to the class's mind, would have clarified when the class had the relevant facts before its members voluntarily paid.

We see no inconsistency in the verdict. Voluntary payment is an affirmative defense to breach of contract, so the jury's verdict was not inherently contradictory. Believing otherwise, the class suggests the jury was confused about what the voluntary-payment defense involved, based on a question the jury asked during deliberations. But the district court answered the jury's question by directing the jury back to the instructions' explanation of the defense, which we customarily deem to be sufficient to cure any confusion. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). What is more, as no follow-up inquiries ensued, the jury presumably felt the instructions answered its question. In other words, one question does not a confused jury make. A reasonable jury could find that Fifth Third breached the contract by charging more than 120%

APR, but that the class members understood that the relevant price was actually the 10% fee. Accordingly, the district court was not required to ask a follow-up interrogatory.

\*       \*       \*

With these objections put to rest, the class's appeal falls short unless it prevails on the availability of the voluntary-payment defense. If the district court correctly determined as a matter of law that Fifth Third could assert the defense, we will affirm. That makes the voluntary-payment defense's applicability outcome determinative in one direction, which is further justification for certifying this appeal to Ohio's high court. *See* Ohio Sup. Ct. R. Prac. 9.01(A).

IV.

In accordance with Supreme Court of Ohio Rule of Practice 9.02, we provide the following information:

A.   Name of the case: *Klopfenstein v. Fifth Third Bank*

B.   Statement of facts, circumstances, questions of law, and other relevant information: Please see the preceding sections of this order. The certified questions of law are:

1.   How are "relevant facts" defined for purposes of the voluntary-payment defense?

2.   Is the voluntary-payment defense available as a matter of law for contracts that include two potentially conflicting price terms?

Our phrasing of the questions is not intended to restrict the Supreme Court of Ohio's consideration of the issues involved. *See In re Nat'l Prescription*, 82 F.4th at 463.

C.   Parties: The plaintiff-appellants/cross-appellees are William R. Klopfenstein, Lori Laskaris, Daniel Laskaris, Brian C. Harrison, Janet Fyock, Adam McKinney, and Donald E. Adanich, on behalf of themselves and all others similarly situated. The defendant-appellee/cross-appellant is Fifth Third Bank.

D.    Counsel information:

*Plaintiffs' counsel*

| Attorney | Contact Information |
|---|---|
| Hassan A. Zavareei | Tycko & Zavareei<br>2000 Pennsylvania Ave., N.W., Suite 1010<br>Washington, DC 20006<br>202-973-0900 |
| Jason Kyle Whittemore | Wagner McLaughlin & Whittemore<br>601 Bayshore Blvd., Suite 910<br>Tampa, FL 33606<br>813-225-4000 |
| Stuart E. Scott | Spangenberg, Shibley & Liber<br>1001 Lakeside Ave., E., Suite 1700<br>Cleveland, OH 44114<br>216-696-3232 |

*Defendant's counsel*

| Attorney | Contact Information |
|---|---|
| Enu A. Mainigi<br>Steven M. Pyser<br>Erin M. Sielaff<br>Craig D. Singer | Williams & Connolly<br>680 Maine Ave., S.W.<br>Washington, DC 20024<br>202-434-5000 |
| G. Karl Fanter<br>Dante A. Marinucci | BakerHostetler<br>127 Public Sq., Suite 2000<br>Cleveland, OH 44114<br>216-861-7918/216-861-7342 |

E.    Designation of moving party:  Although neither side sought certification in this case, we follow our traditional practice of designating the appellants—here, the class—as the moving party.  *See, e.g.*, *In re Nat'l Prescription*, 82 F.4th at 465 (citing *Am. Booksellers*, 560 F.3d at 448; *Planned Parenthood*, 531 F.3d at 413).

\*     \*     \*     \*     \*

In accordance with Supreme Court of Ohio Rule of Practice 9.03(A), we direct Ms. Kelly L. Stephens, Clerk of the United States Court of Appeals for the Sixth Circuit, to serve copies of this order upon counsel for the parties and file this order under the seal of this Court with the Supreme Court of Ohio, along with appropriate proof of service.  This order of certification is signed by Judge Chad A. Readler, the panel's presiding judge.

FOR THE COURT

Hon. Chad A. Readler, Circuit Judge
United States Court of Appeals for the Sixth Circuit

PROOF OF SERVICE

True copies of the foregoing Certification Order were sent this 29 day of May, 2026, by email via the U.S. Court of Appeals for the Sixth Circuit's Case Management/Electronic Case Filing to Hassan A. Zavareei at hzavareei@tzlegal.com, Jason Kyle Whittemore at jason@wagnerlaw.com, and Stuart E. Scott at sscott@spanglaw.com, counsel for Plaintiffs; and to Enu A. Mainigi at emainigi@wc.com, Steven M. Pyser at spyser@wc.com, Erin M. Sielaff at esielaff@wc.com, Craig D. Singer at csinger@wc.com, G. Karl Fanter at kfanter@bakerlaw.com, and Dante A. Marinucci at dmarinucci@bakerlaw.com, counsel for Defendant.

Kelly L. Stephens, Clerk
_____
Kelly L. Stephens, Clerk

A True Copy:

Kelly L. Stephens, Clerk